SARAH H. HAZEWELL Appellant, *v.* GERSHOM H. COURSEN, Respondent.

On the trial of an action the plaintiff is entitled to go to the jury on any theory consistent with the pleadings which his evidence will justify; before he can be limited to any certain theory, on appeal, it must appear in the case as settled that he has thus limited himself on the trial.

Where, therefore, upon the trial the judge stated to the jury that plaintiff had thus limited herself, but her counsel disputed this and claimed that she had not, and it did not appear in the case that she had assented to any such limit, *held* that it was error for the court to take from the consideration of the jury another theory presented and supported by the evidence.

(Argued April 26, 1880 ; decided June 1, 1880.)

THIS action was brought to recover damages for the wrongful conversion by the defendant of a land contract belonging to the plaintiff. The contract, when introduced in evidence, was in form one for the purchase of certain land by George R. Hazewell, of Joseph Fellows, which had been

assigned by Hazewell to George C. Genet, and by him to the defendant. The plaintiff's name did not appear in the contract or in either of the assignments; she claimed that the contract was made for her benefit, and actually belonged to her at the time of the alleged wrongful conversion thereof.

The contract was dated May 1, 1860, and the price to be paid for the land was $20,000.  It is undisputed that $5,000 of the purchase-price was paid.

Hazewell, plaintiff's husband, testified that he made the contract for his wife, and that he paid the $5,000 in two payments, one of $2,000 May 20, 1860, and the other of $3,000 in 1864, that his wife gave him the money to make the payments, and that he used the money thus given to make the payments for her; that, at her request, some time prior to May, 1861, he assigned the contract to Genet, to be held for her; that Genet held it until November, 1863, when by her request he executed an assignment of it, leaving the name of the assignee blank, and delivered the contract to Hazewell, that he might use it to borrow money, or that he might sell it to obtain money for his own use; that he kept it until July, 1865, and then made an arrangement with the defendant to borrow of him, on the security of the contract, the sum of $2,000; that the defendant paid him $250 of this sum, and was to pay him the balance soon, and that he then caused the defendant's name to be inserted as the assignee in the assignment executed by Genet, and then delivered the contract and assignment to him ; that at that time he informed the defendant that the contract belonged to his wife ; that the defendant afterward refused to pay him the balance of the $2,000, and disposed of the contract. There was much in the evidence of Hazewell to discredit him; and whether he was to be believed, and to what extent he was to be believed, were questions for the jury.

Mr. Genet was called as a witness, and testified that some time prior to 1857 he acted for the plaintiff in certain business transactions ; that at that time she owned an interest in a land contract which she sold in 1857 for the consideration of $20,000; that the consideration was paid by the discharge of

notes to the amount of $12,000, which the vendee held against her husband, and the balance in money; that about that time one Woodman held of Fellows a contract for the same land covered by the contract now in question, and plaintiff's husband agreed to procure an assignment of that contract to Genet for plaintiff's benefit and in consideration of his indebtedness to his wife, and of money he had had of her he was to make the payments upon that contract; that that contract was in some way merged in this contract, and Hazewell was to make the payments upon this contract; that, at plaintiff's request, he procured her husband to assign the contract to him for her benefit, and that he held it for several years in trust for her; that in the meantime Hazewell had difficulty to meet the payments upon it, and informed witness that he thought he could dispose of it so as to get back the money she had paid upon it, and to enable Hazewell to sell it for that purpose he executed the assignment in blank ; that he did not at the time know that defendant became the assignee, and that after he learned it and after defendant refused to pay the balance of the $2,000, he had a conversation with him, in which he admitted that he had paid Hazewell only the sum of $250; that, on behalf of the plaintiff, he then tendered to him the sum of $250 and interest and demanded the contract of him.

The plaintiff testified as a witness that she furnished all the money that was paid upon this contract; that she had no personal knowledge of the payments; that her money was either in the hands of her husband or of Mr. Genet, and that she desired it to be invested in this contract, and that she was informed it was so invested by either her husband or Genet; that she had the contract assigned to Genet, and gave him general directions to act for her benefit in reference to it; that she knew nothing of the assignment to the defendant, and had none of the money paid by him.

These were the main features of the case as made by the plaintiff's witnesses.

The defendant called Fellows as a witness, and he testified that the contract between him and Woodman was foreclosed by him for non-performance, and that it had nothing to do with this contract; that he afterward made this contract with

Hazewell, and was never informed that the plaintiff had any interest in it; that Hazewell made three payments upon it, one of $1,000 in currency at Baltimore, one of $1,000 by a draft sent to him, and another of $3,000 by a certified check; and that he finally conveyed the land, in performance of this contract, to the person to whom the contract was assigned by the defendant.

The defendant testified upon his own behalf, that he did not agree to loan Hazewell the $2,000, as testified by him, and to take this contract as security; that he absolutely purchased the contract of him for the $250 paid at the time, and for other considerations stated by him; and that he never knew, prior to the commencement of this action, that the plaintiff had any interest in the contract.

In his charge to the jury, the judge stated that they should find against the plaintiff, if they found that she did not own the contract; and that if they so found, it would not be necessary for them to consider any other question upon that branch of the case. He charged, among other things, as follows: "The first point to be established by the plaintiff is, that she was the owner of the contract. You will perceive that depends on the testimony of Mr. Hazewell. He is the only witness who shows the contract belonged to the plaintiff, or gave facts tending to show the plaintiff was the owner of the contract. On this point you might consider Mr. Genet's evidence as unimpeached, and Mrs. Hazewell's evidence as unimpeached, if you put confidence in them; still, the plaintiff would not have established that she was the owner of this contract; and for this reason the counsel very properly, and by mutual understanding and by statement, confined the proof of the interest of the plaintiff in this contract to this point; that it was her money that was paid on this contract. The contract does not belong to her from any other reason than that her money went into it. Therefore, as Mr. Genet's and Mrs. Hazewell's testimony do not prove, or tend to prove, that her money went into the contract, it rests upon Mr. Hazewell's testimony to show that the contract was plaintiff's; and it is your duty to take a still narrower view of the case; not only must the plaintiff show, in

a general way, that her money went into the contract, but, under the facts of the case, she must show that the $2,000 and the $3,000, the one paid on the 20th of May, 1860, and the other some time after, in the spring of 1864, that those two sums of money were hers at the time they were put into the contract." Thereafter, commenting upon the evidence of Mr. Fellows, as to the manner in which the payments were made, and stating in substance, that if paid as testified to by him, the plaintiff did not become the owner of the contract, he further charged as follows: " If you come to the conclusion that Mr. Hazewell's account is virtually correct, that he took those two sums, not other sums, and while they were the moneys of his wife, paid them over on the contract, then, as far as that is concerned, the plaintiff has established her position ; on this point you must bear in mind, plaintiff does not establish her case by satisfying you generally, or particularly, that from time to time, at dates and places and in sums that are not stated to you, Mrs. Hazewell gave money to Hazewell as she might to any other person to whom she chose to advance or lend it, and he used it in his business, and it arrived at a point when he considered that he owed a certain amount of money, say this $2,000 and $3,000, to Mrs. Hazewell, and then took the same amount out of his own pocket, and considering them or deeming them in his own mind the money of his wife, put them into his contract as her money; if that were the fact, then the plaintiff would not be the owner of the contract, according to the position taken by the plaintiff's counsel in this case."

At the close of the charge plaintiff's counsel stated that as he was not in court when the judge commenced his charge, he had no alternative, to preserve his client's rights, but to except to each and every paragraph of the charge.

Plaintiff's counsel also excepted to that part of the charge which stated that the plaintiff must show that her money— both the $2,000 and the $3,000 — went into the contract; and to that part of the charge which instructed the jury, in substance, that it was not enough for the plaintiff to satisfy the jury generally that Hazewell had her money and put it into

the contract, that that would not make the plaintiff the owner of the contract.

Plaintiff's counsel requested the judge to charge that if the money of Mrs. Hazewell went into the contract at any time before the transfer to the defendant — if Hazewell consented that she should have the contract as a consideration for the money put in — the contract belonged to her. To this request the judge replied that as an abstract proposition it might be true, but that it had no reference to the facts as proved by the plaintiff; and he therefore denied it, and further charged that if the testimony of Genet and the plaintiff were taken as true to the fullest extent, it would not prove that plaintiff was the owner of the contract, on the position taken by the plaintiff; and plaintiff's counsel excepted.

Plaintiff's counsel also requested the judge to charge that if Mr. Hazewell owed the plaintiff, and he transferred this contract in payment of that debt to her, in payment of a prior obligation, it gave her a title, even if the money paid was not her money. In reply to this the judge stated: "that is an entirely different position from what you have taken during the trial. I refuse to charge that, because it is at variance with your declared position heretofore." Plaintiff's counsel disputed that he had taken the position stated, and excepted.

The judge then further charged the jury that "Mr. Hazewell had the power to give the contract to his wife, or to transfer it to her, so as to make it hers in satisfaction of a pre-existing debt that he owed her. He had that power. You cannot, however, say in this case that was the fact, because there is no evidence of any such thing, and therefore you must not consider that the plaintiff is the owner of the contract by reason of such transaction." The plaintiff's counsel excepted to so much of this as begins with the words "there is no evidence."

Upon the request of the defendant's counsel the judge then charged the jury that "the theory of plaintiff is that the payments on the contract in question were made with the money of the plaintiff, and it is the duty of plaintiff to prove that fact by the evidence in the case, and if the plaintiff has failed to do so, the defendant is entitled to a verdict;" and the judge so

charged, and stated that he had intended so to charge before; and plaintiff's counsel excepted. *Held* error.

The court, after reciting the facts above stated, say : " It will thus be seen that the judge charged the jury that the plaintiff could not be held to be the owner of the contract, unless the payments made thereon were made by her husband with money actually obtained by him from her. In this, I cannot doubt, there was manifest error. It was incumbent on her to show that she owned the contract. Provided she owned it, how she came to own it was wholly immaterial. She may have become the owner because it was made for her, and her money actually made the payments ; or it may have been transferred to her in satisfaction of a prior obligation due her from her husband ; or it may have been transferred to her as a gift. In either event, her title would have been equally good as against the defendant. It was not the only possible view to take of her case, as made by her evidence, that the payments made by her husband were made with the identical money obtained from her. It is true that she called her husband as a witness, and she was therefore bound to take his evidence as he gave·it; but she was not absolutely concluded by his statements as a witness. In stating that the money paid upon the contract was money actually furnished by her for the purpose, he may have been mistaken, or may have committed perjury ; yet the fact remains that the payments upon the contract were made, and he, Genet and the plaintiff, concur in giving evidence, showing, if believed, that the contract was made for her benefit; that it was assigned by her request to Genet in trust for her; and that she was the real owner thereof at the time of the alleged ·conversion. The evidence of her husband as to how he obtained the money to make the payments may have been important as bearing upon his credibility, but, so far as I can perceive, was otherwise unimportant.

As I understand the language used by the learned trial judge in his charge, he concurred in these views in the abstract, but claimed that the plaintiff could not have the benefit of them, because she had staked her case on the trial upon the theory that the payments upon the contract were made with money actually furnished by her. That this was so does not appear

from any thing that was said or done during the trial. The plaintiff swore all her witnesses, and proved what she could, and the defendant did the same, and the plaintiff was entitled to go to the jury upon any theory which her evidence would justify. It is true that the judge in his charge stated that plaintiff confined her case to a certain theory at the trial; but that her counsel disputed. Before she could be thus limited, it should appear in the case as settled that she had thus limited herself, or the statement of the trial judge in his charge that she had thus limited herself should have been assented to or undisputed. She cannot be held to have stipulated away or waived any of her rights while it does not appear that she has done so, and while it does appear that she protests that she has not.

This was eminently a proper case for the jury. There were singular features in the evidence on both sides; and because we are of opinion that the jury were not properly instructed in the respects referred to, the judgment must be reversed and new trial granted."

*George C. Genet* for appellant.

*John E. Burrill* for respondent.

EARL, J., reads for reversal and new trial.
All concur.
Judgment reversed.